**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                    :
ALFRED W. SCHWEIKERT, III,          :
                                    :        Civil Action No. 12-5876 (FLW)
                    Plaintiff,       :
                                    :
        v.                           :
                                    :        **OPINION**
BAXTER HEALTHCARE CORP., <u>et al.</u>,  :
                                    :
                    Defendants.     :
_____:

<u>**WOLFSON, United States District Judge**</u>:

The instant matter arises out of claims brought by Plaintiff Alfred W. Schweikert, III ("Plaintiff" or "Schweikert") against Defendant Baxter Healthcare Corporation ("Baxter") related to Plaintiff's previous employment with Baxter. According to the Complaint, which Baxter removed from state court, Plaintiff has been denied certain severance bonuses and benefits because Baxter claims that Plaintiff accepted employment at another company while an employee of Baxter. The Complaint contains claims of breach contract, breach of duty of good faith and fair dealing, fraud and misrepresentation, quasi-contract, estoppel, and interference with advantageous contractual relationship. Baxter moves to dismiss the breach of contract claim, based on Plaintiff's Severance Agreement only, the fraud and misrepresentation claim, and the quasi-contract claim. For the reasons that follow, the Court grants Baxter's motion to dismiss Count One, the breach of contract claim as to the Severance Agreement only, and Count Three, the fraud claim, but denies Baxter's motion to dismiss Count Four, the quasi-contract claim.

**BACKGROUND**

The following facts are taken from the Complaint, and the documents referenced therein, and are assumed to be true for the purposes of this motion to dismiss.

Baxter is a healthcare company that develops products to treat chronic and acute medical conditions by virtue of its expertise in medical devices, pharmaceuticals, and biotechnology. Compl., ¶ 4. Schweikert was employed at Baxter as Director of Global Regulatory Affairs, Medication Delivery starting in September 2007. Id. ¶ 6. In early fall of 2011, Plaintiff was advised by Baxter management that Baxter would begin to transition its New Jersey business operations to Northern Illinois. Id. ¶ 7. For the purpose of retaining Schweikert during this transition period, Baxter offered him certain retention payments in addition to his regular salary (the "Stay Bonus"), which Schweikert accepted (the "Stay Bonus Agreement"). Id. ¶ 8. The Stay Bonus Agreement provided, among other things, that Schweikert would forfeit his right to the Stay Bonus if he voluntarily terminated his employment with Baxter prior to the completion of his responsibilities during the transition period.[1] Id. ¶ 12. The Stay Bonus set the separation date, i.e., Schweikert's final day of employment with Baxter, as July 2, 2012. Id. ¶ 17.

Schweikert's responsibilities during the transition period included assisting and training another Baxter employee, Andrea Doyle, who would absorb his responsibilities in Illinois, as well as preparing a "30-60-90" day list of items to be completed prior to the transition. Id. ¶¶ 14-15. During this time, his supervisor, Amy Giertych, indicated to him that once these tasks were complete – in her estimation, by May 1, 2012 or before – his responsibilities would end and there would be no reason for him to remain with Baxter at that time. Id. ¶¶ 16-17. Indeed, by March

---

[1]    The Stay Bonus Agreement also provided that if Schweikert was involuntarily terminated prior to his completion of the responsibilities, Baxter's senior management would evaluate the payment of the Stay Bonus on a case-by-case basis. Compl., ¶ 13

2012, Andrea Doyle had taken over all of Schweikert's prior responsibilities, independently attending meetings and managing all tasks identified on the 30-60-90 transition list. Id. ¶¶ 18-19. Based on this progress in completing the transition tasks, sometime in the spring of 2012, Schweikert began searching for new employment in anticipation of his imminent termination. Id. ¶ 20. Schweikert notified Giertych and Andrea Saccento, an HR employee, of his job search. Id. ¶¶ 21-22. While searching for a new job, Schweikert still made himself available for scheduled conferences and meetings, which were often canceled by Giertych. Id. ¶ 23. On May 11, 2012, Schweikert attended his exit interview, at which Saccento presented him with his severance package (the "Severance Agreement"), and told Schweikert that he had no remaining work to perform as a Baxter employee. Id. ¶¶ 24, 26. The same day, Schweikert also corresponded by email and telephone with Giertych, who affirmed the fact that there was nothing left for him to do as a Baxter employee. Id. ¶¶ 27-28.

By correspondence dated May 30, 2012, Baxter, through Saccento, informed Schweikert that his employment had been deemed terminated as of May 25, 2012, based on Baxter's belief that Schweikert had accepted employment with another company on April 2, 2012. Id. ¶ 29. Baxter further informed Schweikert that because he had accepted employment elsewhere he was no longer eligible to receive the bonuses and benefits set forth in the Stay Bonus Agreement and Severance Agreement, and demanded that he repay any and all wages and earnings he had received from Baxter between April 2 and May 25, 2012. Id. ¶¶ 30-31.

Plaintiff filed the instant suit against Baxter asserting claims for breach of the Stay Bonus Agreement and the Severance Agreement (Count One), breach of duty of good faith and fair dealing (Count Two), fraud and misrepresentation (Count Three), unjust enrichment, quasi-contract, and quantum meruit (Count Four), estoppel (Count Five), and interference with

contractual relationship (Count Six).[2]  Baxter now moves to dismiss Count One, as to the Severance Agreement only, Count Three, and Count Four.  Additional facts will be set forth as needed.

**STANDARD OF REVIEW**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Id. at 1965.  In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court has explained that principle.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1949.  Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the

---

[2]      Schweikert also asserts an individual misrepresentation and fraud claim against fictitious defendants (Count Seven).

complaint, matters of public record, and documents that form the basis of Plaintiffs' claim.  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief."  <u>West Penn Allegheny Health System, Inc. v. UPMC</u>, 627 F.3d 85, 98 (3d Cir. 2010).  This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy."  <u>Id.</u>  That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions."  <u>Id.</u> (citations and quotations omitted).

**DISCUSSION**

**A.  Breach of Contract Claim – Severance Agreement**

Baxter moves to dismiss Schweikert's breach of contract claim with respect to the Severance Agreement on the basis that Schweikert has failed to exhaust his administrative remedies as required by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, <u>et seq.</u>[3]  Specifically, Baxter asserts that Schweikert failed to appeal his claim in accordance with Baxter's internal administrative procedures, and thus Schweikert's claim in this Court is premature.  Def. Opp., 5.  In response, Schweikert argues that pursuing such relief would be futile, and thus he is exempted from the exhaustion requirements.  Pl. Brief, 1.

ERISA requires that covered benefit plans, such as the Severance Agreement, provide administrative remedies to those whose claims have been denied.  <u>See</u> 29 U.S.C. § 1133; <u>Metro.</u>

---

[3]     Although Schweikert does not refer to ERISA in his Complaint, he does not challenge Baxter's argument that the Severance Agreement falls under the scope of ERISA.  Thus, I find that ERISA governs Schweikert's claims with respect to the Severance Agreement.  <u>See</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 105 (1989) (describing a severance benefit plan as an "employee pension benefit plan" subject to ERISA).

Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007). In that connection, the Third Circuit has held that a court may not consider a claim within the scope of ERISA until the plaintiff has exhausted all administrative remedies available under the terms of the covered plan. "Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Metro. Life Ins. Co. v. Price, 501 F.3d at 278 (quoting Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir.2002)) (internal quotation marks omitted).

Futility is one exception to ERISA's exhaustion requirement. In re Zahl v. Local 641 Teamsters Welfare Fund, No. 09-1100, 2010 WL 1931235, at *3 (D.N.J. May 13, 2010) (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)). In determining whether futility excuses a claim from the exhaustion requirement, a court looks at several factors, not all of which need weigh equally in the analysis: "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." Harrow v. Prudential Ins. Co. of Am., 279 F.3d at 250. The burden of proving futility lies with the plaintiff, who must make a "clear and positive showing" that it actually would have been futile to pursue administrative relief. Gambino v. Arnouk, 232 F. App'x 140, 147 (3d Cir. 2007) (quoting Harrow, 279 F.3d at 249).

I begin with the Baxter administrative procedures relevant to Schweikert's claim. The Severance Agreement is governed by the Baxter Severance Pay Plan (the "Plan"), which sets forth certain administrative procedures for claiming severance benefits, including procedures for

appealing a denied claim.[4]  See Def. Br., Aff. of Ann Donohue, Ex. A at 10.[5]  Specifically, the

Plan provides that if a disagreement over a denial of severance benefits occurs, the employee

may request a full review of the decision by the Plan Administrator, who will make a "full and

fair review of the denied claim" and will render a decision in writing that includes the specific

reasons for the decision.  Id.  The same section of the Plan also provides: "No person eligible for

benefits under the Plan has a right to seek review of a denial of benefits – or to bring any action

to enforce a claim for benefits – in any court, prior to filing a claim for benefits and exhausting

all rights described under this section . . . ."  Id. at 10.

Schweikert does not allege that he followed any of the procedures set forth in the Plan, or

that he ever contacted or communicated with the Plan Administrator.  Rather, Schweikert argues,

but did not plead, that it would have been futile for him to submit any claim or appeal to the Plan

Administrator because Baxter's Human Resources representative and its senior counsel took an

"unwavering position" that Schweikert was ineligible for the benefits provided by the Severance

Agreement.  Thus, Schweikert argues, there was no reason for him to pursue relief from the

"same employer" and the "same department" prior to bringing the instant action in this Court.[6]

Schweikert's reasoning is misplaced.

Schweikert relies primarily on his contention that the Plan Administrator and the Human

Resources center are one and the same, and thus it would have been futile for him to file a claim

or appeal with the Plan Administrator after already having been informed by a Human Resources

---

[4]     Schweikert does not dispute that the Plan governs the issues in this case, relying on it in
his arguments that seeking relief under the Plan would be futile.  See Pl. Opp. at 8-12.

[5]     The Plan is properly considered in this motion to dismiss because it is a document
"integral" to the Complaint.  See W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97
n.6 (3d Cir. 2010) cert. denied, 132 S. Ct. 98 (2011)

[6]     However, Schweikert also states that the "Administrative Committee" for the Plan is the
entity with the sole discretion to interpret and construe the provisions of the Plan.  Pl. Opp., 8.

representative that he would not be receiving the benefits provided by the Severance Agreement. Schweikert, however, has pled no facts to support the argument that the Plan Administrator and Human Resources representatives are the same individual; instead, Schweikert bases his claim on the – unpled – fact that the Plan Administrator and the Baxter Human Resources center "are located at the same address." Pl. Opp., 8-9. Moreover, even if this sole fact were true, Schweikert has not provided any further argument, let alone facts, showing why it would be futile for him to pursue his claim with the Plan Administrator. Schweikert merely contends that his conversations with Baxter's counsel and Human Resources representative show that it was "crystal clear" that Baxter intended to deny Schweikert any benefits under the Severance Agreement. These conclusory arguments, unsupported by any allegations in the Complaint,[7] are insufficient to demonstrate that it would actually have been futile for Schweikert to pursue his claim, or that Baxter had a fixed policy of denying benefits; the law is clear that in order to be excused from ERISA's exhaustion requirement, a plaintiff cannot rely on argument or even bare allegations, but must make a "clear and positive" showing of futility. See Harrow v. Prudential

---

[7]     For this argument, Schweikert relies on several emails, attached as exhibits to his opposition to Baxter's motion to dismiss, between Schweikert, Baxter Human Resources representative Andrea Saccento, Schweikert's attorney, and Baxter's senior counsel Janet Hershman. These documents, however, are not properly considered on a motion to dismiss. See W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d at 97 n.6. In any event, none of these documents pertains to the administrative appeals process set forth in the Plan; in other words, the content of Schweikert's correspondence with Saccento and Hershman does not demonstrate that it would have been futile for Schweikert to pursue administrative relief with the Plan Administrator. See Cielo v. Mars Direct, No. 12-5931 (FLW), 2013 WL 323343, at *4 (D.N.J. Jan. 28, 2013) ("[Like in Harrow, the initial telephonic inquiry is not equivalent to filing a claim with [defendant] as required by the appeal procedures outlined in the Plan; indeed, those telephonic calls alone do not constitute a "clear and positive showing" that [plaintiff] had diligently pursued administrative relief or that he was reasonable in seeking immediate judicial review."); Sultan v. Lincoln Nat'l Corp., No. 03-5190 (JBS), 2006 WL 1806463, at *9-*10 (D.N.J., June 30, 2006) (finding a telephone call and exchange of numerous letters between plaintiff and defendant company to not constitute a diligent effort to pursue administrative relief, notwithstanding that a letter contained an opinion from defendant's senior counsel that plaintiff was not entitled to benefits under the relevant plan).

Ins. Co. of Am., 279 F.3d at 249; Gambino v. Arnouk, 232 F. App'x at 147; Canale v. Yegen, 782 F. Supp. 963, 972 (D.N.J. 1992).

Accordingly, the Court finds that the futility exception to the exhaustion requirement does not apply in this case. Since the futility exception does not apply and Schweikert did not exhaust the appropriate administrative remedies, Schweikert's breach of contract claim in Count One is dismissed without prejudice as to the Severance Agreement only.

### B. Fraud and Misrepresentation Claim

Baxter also moves to dismiss the fraud and misrepresentation claim in Count Three of the Complaint for Schweikert's failure to plead his fraud claim with specificity as required by Fed. R. Civ. P. 9(b). Schweikert, in response, argues that he has plead all the facts necessary to support a claim of common law fraud under New Jersey law.

In Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit elucidated what must be alleged to satisfy the heightened pleading standard of Rule 9(b):

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

Id. at 200 (internal citations omitted); In re Supreme Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (explaining that pursuant to Rule 9(b), at a minimum, a plaintiff must support his/her allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story' – that is, the 'who what, when, where and how' of the events at issue" (citations omitted)). The Court finds the Complaint to be woefully deficient in this regard.

The fraud count of the Complaint consists of only two paragraphs of relevant allegations. Specifically, Paragraph 46 of the Complaint alleges that "agents of Baxter" represented to Schweikert that his taking of employment elsewhere would not "nullify or negate" Schweikert's entitlement to the benefits of the Stay Bonus Agreement, provided Schweikert completed the terms of that agreement, and Paragraph 47 alleges that Baxter's position to the contrary constitutes "fraud and misrepresentation in the inducement of the Stay Bonus Agreement." Compl., ¶¶ 46-47. This, in essence, is the entirety of Schweikert's fraud claim. Nowhere does Schweikert allege the specific "who, what, where, and how" of Baxter's alleged fraudulent inducement; instead, Schweikert only provides vague allegations that at some point in time, some person fraudulently misrepresented to Schweikert the terms of the Stay Bonus Agreement.[8] For this reason, I find that Schweikert has failed to satisfy the heightened pleading standard of Rule 9(b), and, accordingly, I dismiss without prejudice Count Three of the Complaint.

### C. Quasi-Contract Claim

Lastly, Baxter moves to dismiss Count Four of the Complaint on the basis that Schweikert cannot bring a quasi-contract claim when an express contract governs, as one does here. Schweikert argues in opposition that his quasi-contract claim is proper because Baxter has effectively rescinded the contract in question, and thus Schweikert should be entitled to equitable relief in the alternative to his breach of contract claim.

Both federal and state courts in New Jersey routinely hold that, under New Jersey law, a party cannot seek to recover on a quasi-contract theory, e.g., for unjust enrichment, when an

---

[8] Schweikert argues that these facts can be found elsewhere in the Complaint, and are incorporated by reference into Count Three. See Compl., ¶ 45. As Baxter correctly points out, however, these facts concern Schweikert's interactions with Baxter after the execution of the Stay Bonus Agreement – they do not relate to any representations relevant to Schweikert's inducement claim.

actual contract exists governing the relationship between the parties. As this Court has previously explained:

> Recovery on a quasi-contract basis provides a remedy where no contract exists. <u>Callan v. Oakwood Park Homes Corp.</u>, 91 N.J. Super. 105, 110, 219 A.2d 332 (App. Div. 1966). . . . [I]n New Jersey, an unjust enrichment claim will not lie when there is an express contract governing the rights and obligations of the parties. <u>See</u> <u>Moser v. Milner Hotels, Inc.</u>, 6 N.J. 278, 280, 78 A.2d 393 (1951). Indeed, "recovery based on a quasi-contract theory is mutually exclusive of a recovery based on contract theory." <u>Duffy v. Charles Schwab & Co., Inc.</u>, 123 F. Supp. 2d 802, 814 (D.N.J. 2000).

<u>Galayda v. Wachovia Mortg., FSB</u>, No. 10-1065(FLW), 2010 WL 5392743, at *14 (D.N.J. Dec. 22, 2010). In that connection, Baxter does not challenge whether Schweikert adequately pled his quasi-contract claim, only that such a claim is not proper when there is an express contract governing the action. Schweikert argues, however, that his quasi-contract claim is predicated on the argument that no contract exists because it was rescinded when Baxter terminated Schweikert. Thus, Schweikert argues, his quasi-contract claim is a properly pled alternative claim to his breach of contract claim.

Federal Rule of Civil Procedure 8(d)(2) provides that a party may plead claims in the alternative, and courts in this district, including this Court, regularly have refused to dismiss an adequately pled quasi-contract claim even when a express contract is alleged to govern the parties' relationship. <u>See, e.g.</u>, <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Plaintiffs, however, are clearly permitted to plead alternative theories of recovery. Consequently, it would be premature at this stage of the proceedings to dismiss the Indirect Purchasers' and the Commonwealth's unjust enrichment claims on this basis."); <u>Maniscalco v. Brother Intern. Corp. (USA)</u>, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (same); <u>South Broward Hosp. Dist. v. MedQuist, Inc.</u>, 516 F. Supp. 2d 370, 386 (D.N.J. 2007) (rejecting argument that New Jersey law precludes pleading quasi-contract claims in alternative to express contract

claims).[9]  Here, Schweikert has alleged in Count Four of the Complaint that Baxter received valuable services from Schweikert without his being compensated as the result of Baxter's terminating his employment and rescinding the Stay Bonus Agreement.  Accordingly, I conclude that Schweikert has adequately plead his quasi-contract claim in the alternative to his other claims predicated on the Stay Bonus Agreement.  Baxter's motion to dismiss to Count Four is therefore denied.

**Conclusion**

For the reasons stated above, the Court dismisses without prejudice Count One, as to Schweikert's claims with respect to the Severance Agreement, and Count Three.  The Court denies Baxter's motion to dismiss Count Four.  An appropriate order shall follow.

Dated: May 10, 2012                                    /s/    Freda L. Wolfson
                                                       Freda L. Wolfson, U.S.D.J.

---

[9]     In its reply papers, Baxter contends that courts in this district also have denied an alternatively pled quasi-contract claim when an actual contract exists, and cite to a previous decision of this Court to that effect.  See Galayda v. Wachovia Mortg., FSB, No. 10-1065(FLW), 2010 WL 5392743, at *14 (D.N.J. Dec. 22, 2010).  In Galayda, however, one of the motivating factors in dismissing the plaintiffs' unjust enrichment claim was the Court's determination that the plaintiffs "failed to allege any facts in support of this cause of action." Id.  Here, Baxter does not argue that Schweikert has inadequately pled facts to support his quasi-contract claim, only that it is not properly considered as an alternative claim.